**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**MARIA F. CONTRERAS,**

      Plaintiff,

vs.                                                    Civ. No. 00-744 JP/DJS

**LARRY G. MASSANARI, Acting
Commissioner of Social Security,**[1]

      Defendant.

**<u>MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION</u>**[2]

    l.   Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits.  Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding the matter for a rehearing.  The Court will review the Commissioner's

---

[1]   Pursuant to Fed.R.Civ.P. 25, Larry G. Massanari, Acting Commissioner of Social Security is substituted for William A. Halter, Acting Commissioner, as the Defendant in this action. Mr. Massanari was designated by President Bush on March 29, 2001.

[2]   Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings.  <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**<u>Administrative History</u>**

2.    Plaintiff applied for Title II and Title XVI benefits on February 3, 1992.  Tr. 53.  On February 23, 1993 an Administrative Law Judge (ALJ) found that Plaintiff was disabled and entitled to disability benefits.  Tr. 129-146.  On May 13, 1997 Plaintiff's disability was evaluated on continuing disability review.  Tr. 13. On September 5, 1998, the ALJ is the pending matter issued a decision that Plaintiff was no longer disabled since June 1, 1997. He found that Plaintiff had showed medical improvement and that this improvement related to her ability to work.  The Appeals Council denied her request for review.  Tr. 6-7.  The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**<u>Statement of the Facts</u>**

3.    Plaintiff was born on August 18, 1956 and was 42 years old at the time of the decision.  Tr. 10-25, 36.  She is literate in Spanish and illiterate in English.  Tr. 20, 138 and 346.  She completed the sixth grade in Mexico.  When she originally filed her applications in February of 1992, she asserted that she had been disabled since April 1991 due to a back injury.  Tr. 53.  She has

past work experience as a nursing home housekeeper.  Tr. 23.

**Issues**

4.    Plaintiff alleges the ALJ made four errors.  Specifically
Plaintiff  claims  that:  (1)  the  ALJ  failed  to  discuss  whether
Plaintiff's conditions in combination met or equaled a listing; 2)
the ALJ erred in determining that Plaintiff's medical condition had
improved; (3) the ALJ erred in determining that Plaintiff had the
residual functional capacity (RFC) to perform the full range of
light work; and (4) the ALJ did not properly determine Plaintiff's
nonexertional impairments and improperly used the grids.

**The Standard of Review**

5.    The function of this Court on review is not to try the
Plaintiff's claim *de novo*, but to determine upon the whole record
whether  the  Commissioner's  decision  is  supported  by  substantial
evidence.   Hamilton v. Secretary of Health and Human Services, 961
F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more
than  a  scintilla  but  less  than  a  preponderance  of  the  evidence.
Richardson v. Perales,  402  U.S.  389,  401  (1971).    It  is  such
relevant  evidence  as  reasonable  minds  might  accept  as  adequate  to
support  a  conclusion.   Id.   It is well settled that if there is
substantial  evidence  to  support  the  Commissioner's  decision  then
that decision must be upheld.  However, the district court should
not  blindly  affirm  the  Commissioner's  decision  but  must  instead
scrutinize the entire record to determine if the Plaintiff's claim

is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.    The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.    To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities;  and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to

perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

8.    Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.   These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies.  20 C.F.R. §404.1566(d).  This aids the Commissioner in determining what specific job types exist in the national economy for the claimant.  To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity.   20 C.F.R. §§404.1545, 404.1563-.1565.  These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled.  20 C.F.R. §404.1569.   The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9.    Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive

but merely form a framework for disability determination.  Id.  In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id.  If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984).  However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids.  Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.    Plaintiff argues that the ALJ should have analyzed whether her post lumbar laminectomy in combination with her chronic pain condition and her depression met or equaled a listing. Plaintiff's argument fails.  In determining whether a combination of impairments is "equivalent" to a listed impairment, the Plaintiff must present evidence that she has other medical findings related to his impairment that are at least of equal medical significance.  20 C.F.R. Sec. 416.926(a)(A)(ii).  To show that a combination of impairments is "equivalent" to a listed impairment, Plaintiff must present medical findings equal in severity to all

the criteria for the one most similar listed impairment.  <u>Sullivan</u>
<u>v. Zebley</u>, 493 U.S. 521, 531 (1990).   The record does not support
a finding that Plaintiff is depressed. Chronic pain is not an
alleged impairment.  Plaintiff, who has the burden of proof at step
three, has not submitted any evidence or argument to show that she
has one or more impairments that meet or equal a listing at step
three.

        11.    There are two psychological evaluations in the record.
The first was performed by Stephen Sehr, M.D.  He found that the
Plaintiff exhibited "no significant symptoms of psychiatric
illness, including depression or psychosis."  Tr. 111.  He further
concluded that there was "no evidence of disability from a mental
health standpoint."  <u>Id</u>.  In February of 1998 Plaintiff saw Dr.
Carmen Lara for another psychological evaluation.  This evaluation
was ordered to determine whether any "psychological problem..would
impair Ms. Maria F. Contreras from performing at normal range
level."  Tr. 216.  In her report, Dr. Lara stated that the
Plaintiff had no symptoms of anxiety; that she was in contact with
reality; that she and no delusions or hallucinations; and that she
looked "very healthy and well taken care of."  Tr. 219-220.  The
Plaintiff has an IQ of 82 which places her in the normal range.
Tr. 221.   Dr. Lara concluded that Plaintiff had "normal
intelligence with no possibilities of brain damage or organic
dysfunction." Tr. 221.  The only accommodation recommended by Dr.
Lara was that Plaintiff be allowed to sit down when she worked.

Tr. 222.

12.     Plaintiff further argued that a the ALJ should have considered her "post lumbar laminectomy in combination with her chronic pain condition at step three.  Plaintiff's Brief at 7. Chronic pain is a symptom, not an impairment. 20 C.F.R. Sec. 404.1569a(c)(2). Thus, the regulations do not permit the ALJ to consider the "combination" of the two.

13.     The record supports the ALJ's finding that the Plaintiff's medical condition has improved.  Tr. 23.    The diagnostic and laboratory results demonstrate that Plaintiff's condition has improved.    Dr. Pacheco, Plaintiff's treating physician, reviewed Plaintiff's medical records in a July 1997 report.  Tr. 302.  The report showed that Plaintiff had  lumbar discogram which showed symptomatic L4-5 degeneration and disc herniation and low back pain symptoms.  On September 27, 1993 the Plaintiff had back surgery with good results.  Tr. 302.  In October of 1993, in a follow up note on the surgery, the surgeon states that Plaintiff's "left pain had resolved."  Tr. 302.   As of December of 1993, the records show that Plaintiff was undergoing rehabilitation and doing well.   Tr. 302.   In April of 1997, Plaintiff's x-rays of the low back were normal.  Tr. 191.   The "[d]isc space height was preserved."  Id.

14.    In considering Plaintiff's subjective complaints of pain, the ALJ properly found that Plaintiff had symptom-producing medical problems but properly found that the medical evidence did

not support her complaints of disabling pain.  Kepler v. Chater, 68

F.3d 387, 391 (10th Cir. 1995).   As discussed above, the ALJ

considered the medical evidence in rejecting Plaintiff's complaints

of disability.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir.

1993)(the absence of an objective medical basis for the degree of

severity of pain may affect the weight given to the plaintiff's

subjective allegations of pain).

       15.    In his decision, the ALJ also considered other objective

medical evidence.   The decision notes that the objective medical

evidence contains no indication of "muscle atrophy, swelling,

prolonged bedrest, or premature aging."   Tr. 21 and 192.   See

Espino v. Shalala, 900 F. Supp. 95, 100 (W.D.Tx. 1995)(Medical

factors which indicate disabling pain include a limitation in range

of motion, muscle atrophy, weight loss or impairment of general

nutrition, adverse neurological test results and noticeable

swelling and muscle spasm).

       16.    The ALJ properly noted that Plaintiff's treating

physician found that the Plaintiff magnified her symptoms.  Tr. 14,

20 and 192.  The evidence of symptom magnification is replete in

the record.   Her treating physicians noted Plaintiff's symptom

magnification in 1991. Tr. 79-86.  The physician who performed her

psychiatric evaluation also made note of this.   Tr. 111.   Dr.

Pacheco, Plaintiff's treating physician in 1997 wrote that she

exhibited "marked symptom magnification."   Tr. 192.

       17.    The ALJ considered the levels of medication and

frequency of medical treatment in evaluating Plaintiff's credibility.   Thompson, 987 F.2d at 1489.   According to her treating physician, Dr. Pacheco, Plaintiff's "pain is usually controlled somewhat with Advil."  Tr.  190.  Three months before the hearing Plaintiff was prescribed Propoxyphene-N, a generic substitute for Darvocet.  Tr. 228.  Plaintiff testified at the hearing that it made her sleepy.  Tr. 354.  However, the record does not show that she complained of this side effect to any of her doctors.  The record does not support any long-term significant medication side effects.

18.   The ALJ considered the opinion of Plaintiff's treating physician.  On May 8, 1997, Dr. Pacheco wrote that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently.  She also stated that Plaintiff could stand or walk 4 hours in an 8 hour day and that her sitting was not affected by her impairment.  Tr. 193. In July of 1997, Dr. Pacheco changed the lifting recommendations to "no heavy lifting above 10 pounds occasionally."  This limitation is still within the limitations imposed to perform sedentary work. Tr. 301.  The ALJ properly gave great weight to Dr. Pacheco as she is Plaintiff's treating physician.  Reyes v. Bowen, 845 F.2d 242, 244-45 (10th Cir. 1988)  Further, Dr. Pacheco's finding are in line with the consultative evaluator's opinion.   On May 13, 1997, Valerie Dillon, M.D. performed a functional capacity assessment. She found that the Plaintiff can lift 20 pounds occasionally, 10 pounds frequently, can stand/walk for six hours and sit for 6 hours

in an 8 hour day.  Tr. 20.

19.    As shown above, the ALJ's residual functional capacity finding is supported by the record.  The RFC assessment is an administrative finding that is reserved solely to the ALJ and is based upon the totality of the evidence of record. S.S.R. 96-5p; 20 C.F.R. Secs. 404.1545(a), 416.945(a).  It is clear from the ALJ's decision that he considered both the medical and nonmedical evidence in determining that Plaintiff had the RFC for light work. Tr. 24.  Plaintiff's subjective complaints alone cannot establish a disability.  Thompson, 987 F.2d at 1482.

20.    Finally, Plaintiff argues that the ALJ should not have applied the grids in her case.  The grids were promulgated to assist in the determination of social security disability claims. The mere presence of pain does not preclude reliance on the grids because disability requires more than the mere inability to work without pain.  Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989). The grids cannot be applied conclusively when a nonexertional impairment affects the range of activities that the Plaintiff can perform.  Thompson, 987 F.2d at 1488.  As discussed *supra*, the Plaintiff has not demonstrated any significant nonexertional impairment.  The ALJ correctly applied the grids in this matter.

## Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**